**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

FEDERAL DEPOSIT INSURANCE
CORPORATION, IN ITS CAPACITY AS
RECEIVER FOR NETBANK, FSB

        Plaintiff,

-vs-

SIDNEY HOYLE
and
SIDNEY HOYLE DBA
SIDNEY HOYLE APPRAISERS

        Defendants.

COMPLAINT

CV 10- 4245
GLEESON, J.
POHORELSKY, M.J.

Plaintiff, Federal Deposit Insurance Corporation ("FDIC") or ("Plaintiff"), in its capacity as Receiver of NetBank, FSB ("Netbank") by its attorneys Rudow Law Group LLC and Neufeld & O'Leary and for its Complaint, respectfully alleges as follows:

### NATURE OF PROCEEDINGS

1) FDIC commences this action in its capacity as the receiver of NetBankbased upon the Defendants' negligence, negligent misrepresentation, and breach of contract in appraising certain real property, as a result of which damages were sustained.

### THE PARTIES

2) FDIC is a corporation and instrumentality of the United States of America, organized and existing under the laws of the United States of America pursuant to 12 U.S.C. §1811 *et seq*.

3) Sidney Hoyle Appraisers ("Appraisal Company"), upon information and belief, is an assumed and fictitious name by which Sidney Hoyle conducts business. Such business is located at 131-02 Liberty Avenue, 2nd floor, Richmond Hill, New York 11419.

4) Upon information and belief, Sidney Hoyle ("Appraiser" or "Hoyle") is a citizen and resident of New York. (Appraiser and Appraisal Company will collectively be referred to as "Defendants").

## JURISDICTION

5) This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1345 and 12 U.S.C. § 1819(b)(2)(A), which provides that all suits of a civil nature at common law or in equity to which the FDIC, in any capacity, is a party shall be deemed to arise under the laws of the United States.

## STANDING

6) The central claim in this Complaint arises out of one mortgage loan ("Loan") transaction funded by Meritage Mortgage Corporation ("Lender") on January 4, 2006, for the purchase of owner occupied residential real property ("Transaction") by Mohammed A. Mamun ("Borrower") and located at 110-24 164th Street, Jamaica, New York 11433 ("Subject Property").

7) Lender, with its principal place of business at 7215 Financial Way, Jacksonville, FL 32256, was in the business of making mortgage loans.

8) At all times relevant to the subject matter of this Complaint, Lender was a wholly-owned subsidiary of NetBank.

9) Lender transferred all of its interests in the Loan to NetBank.

10) On or before September 27, 2007, NetBank was a Federal Savings Bank with its principal place of business at 1015 Windward Ridge Parkway, Alpharetta, GA 30005.

11) NetBank's deposits were insured by the FDIC.

12) Pursuant to Order No. 2007-43, issued by the Office of Thrift Supervision on September 27, 2007, the FDIC was appointed as Receiver of NetBank.

13) On September 28, 2007, the FDIC accepted its appointment as Receiver of NetBank in accordance with the Federal Deposit Insurance Act, as amended, by Receiver-In-Charge, Robert Schoppe. On the same date, NetBank's bank charter was revoked and its assets were placed in a FDIC Receivership.

14) The FDIC has a substantial legal interest in the subject matter of this case because, as Receiver of NetBank and by express operation of law, the FDIC assumes all rights, titles, powers, privileges, and operations of NetBank. In this case, NetBank has failed and no longer operates as a financial institution. The FDIC has assumed complete control of NetBank and all of its assets as its Receiver. Once the FDIC became Receiver for NetBank, all of its interests were transferred to the FDIC. See 12 U.S.C. § 1821(d)(2). As such, the FDIC now operates as NetBank's successor in interest. See 12 U.S.C. § 1821(d)(2)(A).

## VENUE

15) Venue is proper in this judicial district pursuant to, *inter alia*, 28 U.S.C. §1391(b) in that the Defendants all reside in this judicial district and a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district.

## FACTUAL ALLEGATIONS

### THE TRANSACTION

16) On January 4, 2006, Borrower consummated the Transaction.
17) Lender funded the Loan on January 4, 2006.
18) On January 4, 2006, Borrower signed and executed a note ("Note"), in the original principal amount of $525,000.00, payable to the order of Lender.
19) The Borrower also signed the Mortgage ("Mortgage") that operated as a security instrument for the Note.
20) Upon information and belief, the Loan was a first payment default.
21) Lender transferred all of its interests in the Loan to NetBank.
22) Subject Property was sold by NetBank on September 25, 2007 for $260,000.00, leaving a principal loss of $265,000.00.

### THE APPRAISAL

23) In mortgage loan transactions, lenders need to know the value of the property being purchased to determine whether or not to grant credit to the borrower and, if so, the amount of credit. This is prescribed in the loan-to-value ratio ("LTV") underwriting requirement. The property must appraise for a certain amount creating a specified LTV ("LTV Requirement").

24) In this Transaction, Lender limited the LTV to 100%, meaning to make the loan for which Borrower applied ($525,000.00), the Subject Property had to appraise for $525,000.00 or more.

25) The LTV Requirement intended to protect Lender's investment in the event the Borrower failed to make any payments against the Loan.

26) Hoyle was, at all times relevant hereto, licensed to perform real estate appraisals in the State of New York.

27) On information and belief, Hoyle was at all times relevant to the subject matter of this Complaint an employee of Appraisal Company.

28) Lender employed Defendants, through Lorenzo Mortgage Company, for the limited and express purpose of obtaining an appraisal of the Subject Property ("Appraisal") per the Financial Industry Reform, Recovery and Enforcement Act of 1989 12 U.S.C § 3338 ("FIRREA"), 12 CFR 225.65(b), 12 CFR 323.5(b), 12 CFR 722.5(b), 12 CFR 34.45(b), and 12 CFR 564.5(b) and the Uniform Standards of Professional Appraisal Practice ("USPAP").

29) On December 7, 2005, Appraiser completed the Appraisal and drafted a report ("Appraisal Report") regarding Subject Property. A true copy of the Appraisal Report is attached hereto, identified as Plaintiff Exhibit 1 and incorporated herein by this reference.

30) The Appraisal Report stated, **INTENDED USE:** *The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.* **INTENDED USER:** *The intended user of this appraisal report is the lender/client* ("Appraisal Purpose"); the intended user was expressly not limited to Lorenzo Mortgage Company by stating for *Lorenzo Mortgage Company **and it's successors and it's assigns*** [Emphasis Added].

31) The Lender has direct privity of contract with Defendants.

32) The Appraisal Report stated that as of December 7, 2005 the Subject Property had a value

of $550,000.

33) As a result of the information on the Appraisal, Lender approved the Loan materially based on, *inter alia*, the LTV.

34) The Appraisal does not accurately reflect the value of the Subject Property and materially inflates the Subject Property's value.

35) The Appraisal had to comply with USPAP as stated in the Appraisal on the Appraisers Certification Section 3.

36) Upon completion of the Appraisal, the Appraiser signed the certification that the Appraisal complied with USPAP on the Appraisers Certification Section 3 ("Certification"):

> *I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.*

37) The Appraisal did not comply with USPAP.

38) The Appraisal contained material misrepresentations including: the comparable sales selected locationally, physically and functionally were not most similar to the Subject Property; comparable #1 and comparable #3 were flip sales (flip comparables are properties that appear to have been purchased by investors and quickly resold at a higher price for profit)(by their nature, they are inappropriate comparables for an appraisal); comparable #2 was a new two family home compared to the Subject Property which was a single family home. ("Misrepresentation – Comparable Not Similar to Subject Property").

39) The Appraisal contained material misrepresentations including: the sale or transfer history for the comparable sales was not complete and accurate; comparable #1 had a prior transfer history that was not noted. Comparable #1 had sold on 2/2/2005 for $325,000. Comparable #3 also had a prior transfer that was not noted. Comparable #3 had sold on 12/20/2004 for $370,000. ("Misrepresentation – Sale and Transfer History of Comparables Not Complete or Accurate")(The Misrepresentation – Comparable Not Similar to Subject Property and Misrepresentation – Sale and Transfer History of Comparables Not Complete or Accurate are collectively referred to as "Material Misrepresentations").

40) The Material Misrepresentations in the Appraisal inflated the Subject Property's value by $177,500.00 in violation of USPAP.

41) An accurate valuation of the Subject Property conforming to USPAP guidelines as of December 7, 2005 would have placed the value of the Subject Property at $372,500.00.

42) When Lender made the Loan ($525,000.00), the actual LTV was 141% because of the inflated appraisal.

43) On the date Lender made the Loan, the Subject Property was worth $152,500.00 less than the Loan and thereby defeated the Lender's LTV requirement.

## COUNT I – NEGLIGENCE
(Sidney Hoyle Appraisers and Sidney Hoyle)

44) Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraph 1 through 43, with the same force and effect as if fully set forth at length hereat.

45) Hoyle is licensed as a certified residential real estate appraiser by the New York Department of State - Division of Licensing Services.

46) Appraisal Company is a business whose purpose is to conduct residential real estate appraisals in the State of New York.

47) Appraiser and Appraisal Company, in their professional capacity, owed Lender a duty to conform to a certain standard of conduct and prepare the Appraisal using that degree of care and skill, which a reasonably competent appraiser acting in similar circumstances would use in preparing an appraisal.

48) This duty included, but was not limited to, complying with USPAP as stated in the Appraisal, on the Appraisal Report – Appraisers Certification Section 3.

49) The Appraisal contained negligent Material Misrepresentations.

50) By making the Material Misrepresentations, the Appraiser and Appraisal Company failed to conform to the standard of care and duty with respect to the Lender.

51) Appraiser and Appraisal Company's conduct included negligently preparing the Appraisal; misrepresenting material facts and/or omitting such material facts, each of which was in direct violation of USPAP; and otherwise overstating the value of the Property by $177,500.00.

52) Appraiser and Appraisal Company knew or should have known that the Material Misrepresentations were false.

53) Appraiser and Appraisal Company knew and were aware that the Appraisal and statements

6

contained therein would be used by Lender (or Lorenzo Mortgage Company's principal) for the particular purpose of determining whether or not to make the Loan and the amount to make the Loan, based on the LTV requirement, inter alia, because the Appraisal contained the Appraisal Purpose statement.

54) Lender justifiably took action by reasonably relying upon the representations of the Appraiser and Appraisal Company in the Appraisal Report for the purpose of determining whether or not to make the Loan and the amount to make the Loan, based on the LTV requirement.

55) Appraiser and Appraisal Company knew, as is stated in the Appraisal Report, that Plaintiff would rely on the Appraisal Report and the statements made therein in determining whether or not to make the Loan and the amount to make the Loan.

56) But for Appraiser and Appraisal Company's negligence, Lender would not have approved or funded the Loan, and Plaintiff, as successor in interest to Lender, would not have been damaged as set forth above.

57) But for Appraiser and Appraisal Company's negligence, Lender would have required a viable secondary source of repayment to liquidate if Borrower failed to pay the Loan.

58) Plaintiff's damages were proximately caused by Appraiser and Appraisal Company's negligence and failure to use that degree of care and skill, which a reasonably competent appraiser would have used in preparing an appraisal report.

59) As a direct and proximate result of the aforementioned negligence of Appraiser and Appraisal Company, Plaintiff, as successor in interest to Lender, has been damaged as set forth above and in the amount of $265,000.00.

WHEREFORE, Plaintiff, FDIC demands judgment against Appraiser and Appraisal Company in the amount of $265,000.00 in compensatory damages, plus interest, costs and any and all other relief to which this Court finds it entitled.

## COUNT II – NEGLIGENT MISREPRESENTATION
(Sidney Hoyle Appraisers and Sidney Hoyle)

60) Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 43 and paragraphs 45 through 59, with the same force and effect as if fully set forth at length hereat.

61) Hoyle is licensed as a certified real estate appraiser by the New York Department of State-Division of Licensing Services.

62) Appraisal Company is a business whose purpose is to conduct residential real estate appraisals in the State of New York.

63) Appraiser and Appraisal Company prepared the Appraisal for the benefit of the Lender.

64) Appraiser and Appraisal Company, in their professional capacity, owed Lender a duty to prepare the Appraisal using that degree of care and skill, which a reasonably competent appraiser acting in similar circumstances would use in preparing an appraisal.

65) This duty included, but was not limited to, complying with USPAP as stated in the Appraisal, on the Appraisal Certification Section 3.

66) The Appraisal contained negligent Material Misrepresentations.

67) By making the Material Misrepresentations, the Appraiser and Appraisal Company failed to conform to the standard of care and duty with respect to the Lender.

68) Defendants' conduct included negligently preparing the Appraisal; presenting the Appraisal to the Lender's Agent (linking the Appraisal and its Material Misrepresentations to the Lender); misrepresenting material facts and/or omitting such material facts, each of which was in direct violation of USPAP; and otherwise overstating the value of the Property by $177,500.00.

69) Appraisal and Appraisal Company knew or should have known that the Material Misrepresentations were false.

70) Appraiser and Appraisal Company knew and were aware that the Appraisal and statements contained therein would be used by Lender (or Lorenzo Mortgage Company's principal) for the particular purpose of determining whether or not to make the Loan and the amount to make the Loan, based on the LTV requirement, *inter alia*, because the Appraisal contained the Appraisal Purpose statement.

71) Lender justifiably took action by reasonably relying upon the representations of the Appraiser and Appraisal Company in the Appraisal Report for the purpose of determining whether or not to make the Loan and the amount to make the Loan, based on the LTV

requirement.

72) Appraiser and Appraisal Company knew, as is stated in the Appraisal Report, that Plaintiff would rely on the Appraisal Report and the statements made therein in determining whether or not to make the Loan and the amount to make the Loan.

73) But for Appraiser and Appraisal Company's Material Misrepresentations, Lender would not have approved or funded the Loan, and Plaintiff, as successor in interest, would not have been damaged as set forth above.

74) But for Appraiser and Appraisal Company's Material Misrepresentations, Lender would have required a viable secondary source of repayment to liquidate if Borrower failed to pay the Loan, which they did.

75) Plaintiff's damages were proximately caused by Appraiser and Appraisal Company's Material Misrepresentations and failure to use that degree of care and skill, which a reasonably competent appraiser would have used in preparing an appraisal report.

76) As a direct and proximate result of the aforementioned negligent Material Misrepresentations of Appraiser and Appraisal Company, Plaintiff, as successor in interest to Lender, has been damaged as set forth above and in the amount of $265,000.00

WHEREFORE, Plaintiff, FDIC demands judgment against Appraiser and Appraisal Company in the amount of $265,000.00 in compensatory damages, plus interest, costs and any and all other relief to which this Court finds it entitled.

### COUNT III – BREACH OF CONTRACT
(Sidney Hoyle Appraisers and Sidney Hoyle)

77) Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 43 and paragraphs 45 through 59, and 61 through 76, with the same force and effect as if fully set forth at length hereat.

78) The Appraisal Report constitutes the formation of the contract between the Lender (via its agent Lorenzo Mortgage Company) and Defendants.

79) The Lender has direct privity of contract with Defendants.

80) The Lender was the beneficiary of the Appraisal and the Appraisal was completed for Lender's benefit.

81) Lender, through its agent, performed on the contract by providing payment to Defendants for their services.

82) Upon completion of the Appraisal, the Appraiser signed the Certification that the Appraisal complied with USPAP.

83) Defendants breached their obligations under the Appraisal by not complying with USPAP.

84) Defendants negligently failed to comply with the contract.

85) The Appraisal contained Material Misrepresentations, which inflated the value of the property in violation of USPAP.

86) But for Defendants' breach of the contract would not have approved and funded the Loan accordingly, Defendants' breach of contract resulted in Plaintiff's damages as set forth above.

**WHEREFORE**, Plaintiff, FDIC demands judgment against Appraiser and Appraisal Company in the amount of $265,000.00 in compensatory damages, plus interest, costs and any and all other relief to which this Court finds it entitled.

_/s/ William M. Rudow_
William M. Rudow, Esquire

WilliamRudow@RudowLaw.com
Rudow Law Group, LLC
5603 Newbury Street
Baltimore MD 21209
Telephone: (410) 542-6000
Facsimile: (410) 542-9500
Attorney for Plaintiff FDIC in its capacity as Receiver of NetBank
By: /s/ William M. Rudow MD Fed Bar ID No.: 09937

_/s/ David L. Fleck_
David L. Fleck, Esquire

DavidFleck@RudowLaw.com
Rudow Law Group, LLC
5603 Newbury Street
Baltimore MD 21209
Telephone: (410) 542-6000
Facsimile: (410) 542-9500
Attorney for Plaintiff FDIC in its capacity as Receiver of NetBank
By: /s/ David L. Fleck CA State Bar ID No.: 192912

_/s/ David S.J. Neufeld_
David S.J. Neufeld, Esquire

DNeufeld@NeufeldandOLeary.com
Neufeld & O'Leary
230 Park Avenue
New York, New York 10169
Telephone: (212)986-0999 (ext. 102)
Attorney for Plaintiff FDIC in its capacity as Receiver of NetBank
By: /s/ David S.J. Neufeld, Esquire (DN-0917)