UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

FEDERAL DEPOSIT INSURANCE
CORPORATION, IN ITS CAPACITY AS
RECEIVER FOR NETBANK, FSB

                      Plaintiff,

                 - v -

SIDNEY HOYLE
and
SIDNEY HOYLE DBA
SIDNEY HOYLE APPRAISERS

                   Defendants.

-----------------------------------------------------------x

**<u>REPORT AND
RECOMMENDATION</u>**

10-CV-4245 (JG) (VVP)

POHORELSKY, Magistrate Judge:

      This matter was referred by the Honorable John Gleeson to the undersigned to issue a

Report and Recommendation concerning the plaintiff's motion for a default judgment against the

defendants Sidney Hoyle and Sidney Hoyle d/b/a Sidney Hoyle Appraisers ("Hoyle" or

"defendants").  The plaintiff's claims stem from the defendants' alleged negligence in

performing an appraisal of real property for a mortgage loan transaction.  The plaintiff seeks

$355,365.22 in damages based on the defendants' default.[1]  As discussed below, the court

concludes that liability is established by the defendants' default and that judgment should be

entered awarding damages in the amount of $265,000 plus prejudgment interest.

---

[1]  In support of the motion for a default judgment, the plaintiff has submitted a Memorandum of Law [DE 16-2] ("Plaintiff's Mem."), a copy of the appraisal report prepared by the defendants [DE 16-3] ("Appraisal Report"), the Affidavit of Steven Albert, an individual retained to retroactively appraise the property with an accompanying reappraisal report [DE 16-4, 16-5, 16-6] ("Albert Aff." and "Reappraisal Report," respectively), a copy of the "Real Property Transfer Report" reflecting the re-sale of the property at issue here by the plaintiff [DE 16-7], and the Affidavit of Karen Freeborn regarding damages [DE 16-8] ("Freeborn Aff.").

# I.    ENTRY OF DEFAULT JUDGMENT

The plaintiff Federal Deposit Insurance Corporation ("FDIC") is a corporation and instrumentality of the United States, organized and existing pursuant to 12 U.S.C. § 1811 *et seq*. The defendants are Sidney Hoyle and the company through which he conducts his appraisal business, Sidney Hoyle Appraisers.  The plaintiff FDIC brings this case in its capacity as the receiver of NetBank, a failed national bank previously operating in Alpharetta, Georgia. Following NetBank's failure, its bank charter was revoked, and its assets were placed in a FDIC receivership.  Complaint ¶ 13.  As receiver, the FDIC operates as NetBank's successor in interest.  Complaint ¶ 14.  Jurisdiction in this court is based on 28 U.S.C. § 1345 and 12 U.S.C. § 1819(b)(2)(A), which provides that "all suits of a civil nature at common law or in equity to which the [FDIC], in any capacity, is a party shall be deemed to arise under the laws of the United States."  Accordingly, the FDIC may bring suit on behalf of NetBank, as it has done here.

"It is well established that a party is not entitled to a default judgment as a matter of right; rather the entry of a default judgment is entrusted to the sound judicial discretion of the court." *Cablevision of S. Conn. v. Smith*, 141 F. Supp. 2d 277, 281 (D. Conn. 2001) (quoting *Shah v. N.Y. State Dep't of Civil Servs.*, 168 F.3d 610, 615 (2d Cir. 1999) (internal quotation marks omitted)).  When deciding whether to enter default, the court considers various factors, including, (1) the amount of money involved; (2) whether issues of fact or of substantial public importance are at stake; (3) whether the default is largely technical; (4) whether the plaintiff has been substantially prejudiced by the delay; (5) whether the grounds for default are clearly established; (6) whether the default was caused by a good-faith mistake or excusable neglect; (7) how harsh an effect default would have; and (8) whether the court believes it later would be obligated to set aside the default on defendant's motion.  *Cablevision of S. Conn.*, 141 F. Supp.

2d at 281 (citing 10 Moore's Federal Practice § 55.20(2)(b) (3d ed. 1999)). In civil actions, when a party fails to appear after being given notice, the court normally has justification for entering default. *Bermudez v. Reid,* 733 F.2d 18, 21 (2d Cir. 1984).

The plaintiff FDIC asserts claims for breach of contract, negligence, and negligent misrepresentation in connection with the defendants' appraisal of real property. The plaintiff has filed the affidavit of a process server attesting to service of the summons, complaint, civil cover sheet, and individual practices of Judge Gleeson upon the defendants. *See* Affidavit of Service by Nelson Carvajal [DE 9]. After four attempts to serve the defendants in person, the process server completed service of process by affixing the papers on a front gate at Hoyle's address and mailing the papers to the same address. *Id.* Such method of service is authorized by Section 308 of the New York Civil Practice Laws and Rules and Rule 4(e) of the Federal Rules of Civil Procedure. The defendants have failed to answer or otherwise defend this action. Plaintiff's Mem. at 1. Nor have the defendants responded to the plaintiff's application for default. The plaintiff moved for a default judgment, and on January 9, 2012, the Clerk of Court entered a default against the defendants pursuant to Federal Rule of Civil Procedure 55. Clerk's Entry of Default as to Sidney Hoyle and Sidney Hoyle d/b/a/ Sidney Hoyle Appraisers, 1/09/2012 [DE 18].

The grounds for default are therefore clearly established, and there are no grounds for believing the default is based on a good-faith mistake or technicality. *See Cablevision Systems N.Y.C. Corp. v. Leath*, No. 01-CV-9515, 2002 WL 1751343, at *2 (S.D.N.Y. July 26, 2002) (default willful where defendant never responded to complaint, appeared or explained default). Based on the defendants' inaction, it is unlikely that the court will be compelled at some future

date to enter an order vacating the default judgment. Judgment by default should therefore be granted so long as liability and damages are appropriately established.

## II.    LIABILITY

Given the default, the well-pleaded allegations of the complaint are deemed admitted, except as to the amount of damages. *See, e.g.*, *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981). The plaintiff is entitled to all reasonable inferences in its favor. *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (citing *Au Bon Pain Corp.*, 653 F.2d at 65). In a motion for a default judgment, the court considers the complaint in its entirety, as well as documents incorporated into the complaint by reference. *Mayflower Transit, LLC v. Colvin*, No. 11-CV-663, 2011 WL 4975793, at *2 (E.D.N.Y. Sept. 20, 2011), *report and recommendation adopted by* 2011 WL 5024291 (E.D.N.Y. Oct 19, 2011). Liability does not automatically attach from the well-pleaded allegations of the complaint, however, as it remains the court's responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief. *See Au Bon Pain Corp.*, 653 F.2d at 65.

The well-pleaded allegations of the complaint establish the following facts. Meritage Mortgage Corporation ("Lender"), through its agent Lorenzo Mortgage Company ("Lorenzo Mortgage") hired the defendants to perform an appraisal of real property in connection with a mortgage financing transaction between Lender and Mohammed A. Mamun ("Borrower").[2] Complaint ¶¶ 6, 28. The purpose of the appraisal was to determine the value of the property in

---

[2] Lender is a wholly-owned subsidiary of NetBank in the business of making mortgage loans. Complaint ¶¶ 7, 8. The plaintiff FDIC has substantial legal interests in the transaction between Borrower and Lender because Lender transferred all of its interests in the loan to NetBank. *See id.* ¶ 9. When the FDIC became receiver for NetBank, NetBank's interests were transferred to the FDIC. *Id.* ¶ 14.

order to decide whether or not to make a loan to Borrower, and if so, in what amount. *See id.* ¶ 23. For this transaction, Lender had set the loan-to-value ratio ("LTV") at 100%. *Id.* ¶ 24. This meant that in order for Lender to finance a loan in the amount for which Borrower applied ($525,000), the property appraisal had to equal or exceed $525,000. *Id.* ¶ 24.

The Appraisal Report prepared by Hoyle, dated December 7, 2005, valued the subject property ("Subject Property") at $550,000.[3] *Id.* ¶ 32. As a result of the information in the Appraisal, Lender approved the loan as it met the LTV of 100%. *Id.* ¶ 33. Borrower, however, defaulted before making his first payment. *Id.* ¶ 20. On September 25, 2007, NetBank sold the Subject Property for $260,000. *Id.* ¶ 22.

The complaint alleges that the defendants prepared the Appraisal Report in a manner that violated the Uniform Standards of Professional Appraisal Practice ("USPAP") and inflated the value of the Subject Property by $177,500. *Id.* ¶¶ 34, 37-40. Had the Subject Property been appraised correctly, its value would have been $372,500 as of December 7, 2005. *Id.* ¶ 41. Based on this violation of professional standards, the complaint asserts three claims against the defendants: (1) negligence; (2) negligent misrepresentation; and (3) breach of contract. As discussed below, the court finds that the allegations of the complaint sufficiently establish the defendants' liability on all three claims.

## A. Breach of Contract

As an initial matter, the court finds that the plaintiff FDIC has standing to pursue the claims in the complaint based on the transaction the defendants entered into with Lorenzo Mortgage. The complaint alleges that there is an agency relationship between Lorenzo Mortgage

---

[3] The Appraisal Report is referred to and quoted throughout the complaint and is therefore incorporated into the complaint by reference.

and Lender.  Complaint ¶ 78.  A contract made on behalf of a principal by its agent is a contract

of the principal.  *See, e.g.*, *Parola v. Lido Beach Hotel, Inc.*, 99 A.D.2d 465, 470 N.Y.S.2d 44

(2d Dep't 1984).  Agency is "a fiduciary relationship which results from the manifestation of

consent of one person to allow another to act on his or her behalf and subject to his or her

control, and consent by the other so to act."  *Maurillo v. Park Slope U–Haul*, 194 A.D.2d 142,

146, 606 N.Y.S.2d 243, 246 (2d Dep't 1993) (citations omitted); *see, e.g.*, *Time Warner City

Cable v. Adelphi Univ.*, 27 A.D.3d 551, 552, 813 N.Y.S.2d 114, 116 (2d Dep't 2006).  Here, the

complaint alleges that Lender employed the defendants through Lorenzo Mortgage for the

express purpose of an appraisal on the Subject Property.  Complaint ¶ 28.  The complaint also

alleges that Lender paid Hoyle through Lorenzo Mortgage.  *Id.* ¶ 81.  These allegations are

sufficient to establish an agency relationship between Lender and the defendants.  The complaint

further alleges that Lender transferred all of its interests in the loan to NetBank.  *Id.* ¶ 9.

Viewing the allegations in the complaint in the light most favorable to the plaintiff, the court

takes this statement to mean that the interests transferred included the right to sue Hoyle for harm

resulting from the Appraisal Report.  Finally, as receiver of NetBank, the plaintiff FDIC may

bring all actions on behalf of NetBank.  The link between the defendants and the plaintiff has

thus been adequately pleaded, and there is no issue as to the plaintiff FDIC's standing to bring

this suit.

The plaintiff also pleads sufficient facts to maintain a claim for breach of contract.  The

elements of a breach of contract action are "(1) the existence of an agreement, (2) adequate

performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4)

damages."  *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d. 168,

177 (2d Cir. 2004) (quoting *Harsco Corporation v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996)).  The

complaint alleges that Lender retained the defendants for the express purpose of appraising the Subject Property "per the Financial Industry Reform, Recovery and Enforcement Act of 1989 . . . and the Uniform Standards of Professional Appraisal Practice . . . ." Complaint ¶ 28. The allegations are silent as to whether the agreement was oral or in writing. "[M]anifestation of mutual assent," however, need only be "sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." *See Express Indus. & Terminal Corp. v. N.Y. State Dep't of Transp.*, 93 N.Y.2d 584, 589 (1999) (citing *Martin Delicatessen v. Schumacher*, 52 N.Y.2d 105, 109); *see also Maffea v. Ippolito*, 247 A.D.2d 366, 367, 668 N.Y.S.2d 653, 654 (2d Dep't 1998). Furthermore, oral agreements can be binding and enforceable absent a clear expression of intent to be bound only by a writing. *See, e.g.*, *Wisdom Import Sales Co. v. Labatt Brewing Co.*, 339 F.3d 101, 109 (2d Cir. 2003) (citing *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 74–75 (2d Cir. 1984)). The complaint does not indicate any intent by the parties to be bound only by a writing. Thus, Lender's employment of Hoyle, whether agreed upon orally or in writing, created an agreement sufficient to satisfy the first element of the plaintiff's claim.[4] The complaint further alleges that Lender paid Hoyle for his services through Lorenzo Mortgage (Complaint ¶ 81), establishing performance on the part of the plaintiff to meet the second element of the claim.

The third element, breach, is met based on the plaintiff's allegations that the defendants prepared their appraisal in a negligent manner. Under New York law, a professional performing

---

[4] In its discussion of the breach of contract claim, the plaintiff alleges that the Appraisal Report "constitutes the formation of the contract between the Lender . . . and Defendants." Complaint ¶ 78. The court has not been presented with and is unaware of any authority to support the conclusion that an appraisal report constitutes a contract, nor does the report on its face appear to constitute an agreement. Rather, it evidences a prior agreement to perform services. The complaint's allegations of Lender's employment of Hoyle, however, do establish the existence of an agreement. The court thus does not need to resolve whether or not the report itself is a contract.

work under a contract impliedly agrees to exercise reasonable care and skill in the completion of his contractual duties. *See Vitol Trading S.A., Inc. v. SGS Control Servs., Inc.*, 680 F. Supp. 559, 567 (S.D.N.Y. 1987) *rev'd on other grounds*, 874 F.2d 76 (2d Cir. 1989) (reversing the district court's award of damages, but affirming its finding of breach of contract based on the defendant's failure to perform in a workman-like manner). The complaint alleges that compliance with USPAP and the use of appropriate comparables form part of the ordinary professional obligations of an appraiser. *See* Complaint ¶¶ 48-50. The defendants have also certified their compliance with USPAP and the selection of accurate comparable sales, indicating that the defendants understood these obligations to be part of their contractual duties. *See* Appraisal Report at 7. Thus, as imposed by law and evinced by the Appraisal Report, compliance with USPAP and the selection of appropriate comparables constituted implied terms of the agreement between the defendants and Lender. Here, the complaint alleges that the defendants selected comparable sales that were locationally, physically and functionally not the most similar to the Subject Property. Complaint ¶ 38. Moreover, comparable #2 was a new two-family home, even though the Subject Property was a single-family home. *Id.* The Appraisal Report further failed to note prior transfer history of comparables #1 and #3. *Id.* ¶ 39. The defendants' failure to skillfully select and accurately represent the comparables was a violation of USPAP. *Id.* ¶ 51. By failing to comply with USPAP, the defendants breached their agreement with Lender.

Lastly, the plaintiff alleges that it suffered direct damages as a result of the defendants' breach. NetBank made a loan that it otherwise would not have approved, *id.* ¶¶ 56, 73, 86, leading to financial loss when the loan defaulted and the proceeds from the sale of the foreclosed property were insufficient to repay the loan. *Id.* ¶¶ 20, 22. For these reasons, the elements of the

plaintiff's breach of contract claim have been sufficiently established for the purposes of a default judgment.

## B. Negligence

In the alternative, and should its contract claim fail, the FDIC asserts a claim for "negligence" in its second cause of action. The court finds that the complaint has adequately alleged a claim for negligence by the defendants.[5] The elements of a cause of action in negligence are (1) a duty on the part of the defendant as to the plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result. *See Akins v. Glens Falls City Sch. Dist.*, 53 N.Y.2d 325, 333 (1981) (citations omitted); *Greenberg, Trager & Herbst, LLP v. HSBC Bank USA*, 17 N.Y.3d 565, 576 (2011).

The element of duty is established because appraisers, as professionals, have a legal duty to perform their work competently. *See Oestreicher v. Simpson*, 243 N.Y. 635 (1926); *see also Chemical Bank v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 74 A.D.2d 786, 787, 425 N.Y.S.2d 818, 819 (1st Dep't 1980) (holding that a real estate appraiser assumes a duty of care to

---

[5] The FDIC's tort cause of action may stand alternative to, but not in addition to its action in contract. New York courts have long grappled with whether a party may assert causes of action in both contract and tort "where the parties' relationship initially is formed by contract, but there is a claim that the contract was performed negligently." *Sommer v. Federal Signal Corp.*, 79 N.Y.2d 540, 551 (1992). "A tort may arise from the breach of a legal duty independent of the contract, but merely alleging that the breach of a contract duty arose from a lack of due care will not transform a simple breach of contract into a tort." *Id.* (citing *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 389 (1987); *Rich v. N.Y. Cent. & Hudson Riv. R.R. Co.*, 87 N.Y. 382, 398 (1882)). Here, the plaintiff supports both claims with the same allegations regarding the circumstances and the harm sustained. The plaintiff also bases its breach of contract claim on the existence of a professional duty of care on the part of the defendants. Therefore, no duty independent of the contract exists in this case. *Cf. Tsafatinos v. Lee David Auerbach, P.C.*, 80 A.D.3d 749, 750, 915 N.Y.S.2d 500, 500 (2d Dep't 2011) (finding that the plaintiffs' breach of contract and breach of fiduciary duty causes of action were duplicative of their legal malpractice cause of action because the two former claims were based on the same facts underlying the latter claim and the plaintiffs did not allege distinct damages). Nonetheless, a plaintiff may assert alternative legal theories on the same allegations in support of recovery. *See, e.g.*, *Auguston v. Spry*, 282 A.D.2d 489, 491, 723 N.Y.S.2d 103, 106 (2d Dep't 2001) (citations omitted).

the financing party if it was known that a financing party would rely on its appraisal); *Navarre Hotel & Importation Co. v. American Appraisal Co.*, 156 A.D. 795, 797-98, 142 N.Y.S. 89, 91-92 (1st Dep't 1913) (holding that an appraisal company may be held liable to an undisclosed principal for negligent appraisal of property).  Compliance with USPAP forms a part of an appraiser's ordinary professional obligations to prepare credible and reliable appraisals. Complaint ¶ 48; *see also* Albert Aff. ¶¶ 11-12.  The defendants' duty of care extended specifically to the plaintiff because the defendants "knew . . . that the Appraisal . . . would be used by Lender for the . . . purpose of the Loan . . . ."  Complaint ¶ 53.

The defendants' failure to comply with USPAP constitutes a breach of a duty to the plaintiff.  Complaint ¶¶ 48, 51.  In *Oestreicher*, the Court of Appeals upheld a claim for negligence against an appraisal company whom the plaintiff hired to appraise jewelry and who fixed the value at twice its actual worth. 243 N.Y. at 635. The defendants in this case likewise prepared an appraisal that inflated the property's value by $177,500.  The inflated figure resulted from the defendants' failure to choose appropriate comparables and failure to disclose the comparables' past transfer histories.  Complaint ¶¶ 38-40.  Both actions were violations of USPAP.  *Id.* ¶ 51.  As a result, Lender approved a loan transaction it would not have otherwise approved, causing it damages in the value of the loan.  *Id.* ¶¶ 56-59.  The foregoing allegations in the complaint, admitted to be true by the defendants' default, are sufficient to establish liability on a claim of negligence.

### C.  Negligent Misrepresentation

The facts as alleged in the complaint are also sufficient to establish a claim of negligent misrepresentation.  A claim for negligent misrepresentation resulting only in economic injury "requires that the underlying relationship between the parties be one of contract or the bond

between them so close as to be the functional equivalent of contractual privity." *Ossining Union Free Sch. Dist. v. Anderson LaRocca Anderson*, 73 N.Y.2d 417, 419 (1989); *see also Parrott v. Coopers & Lybrand, L.L.P.*, 95 N.Y.2d 479, 483 (2000) (citations omitted). As discussed above, Lender, through Lorenzo Mortgage, contracted directly with Hoyle. The relationship between the plaintiff and the defendants as alleged is thus one of contractual privity.

The complaint's allegations also meet the remaining elements for negligent misrepresentation. They are (1) awareness by a declarant that a statement is to be used for a particular purpose, (2) reliance by a known party on the statement in furtherance of that purpose, and (3) some conduct by the declarant linking it to the relying party and evincing its understanding of that reliance. *See Credit Alliance Corp. v. Arthur Andersen & Co.*, 65 N.Y.2d 536, 551 (1985). The allegations establish the defendants' awareness of the particular purpose of the appraisal based on portions of the Appraisal Report that state that the "intended use" of the report is a mortgage finance transaction. Complaint ¶¶ 30, 70; *see also* Appraisal Report at 6. Relying on the appraised value of the Subject Property, and in furtherance of the mortgage finance transaction, Lender approved Borrower's loan. Complaint ¶ 71. Furthermore, Lender was a party known to the defendants because the Appraisal Report states that the "intended user" is the "lender/client." *Id.* ¶¶ 30, 72; *see also* Appraisal Report at 6. The third element of the claim is met because the defendants prepared and presented the appraisal to Lorenzo Mortgage, Lender's agent. Complaint ¶ 68. The Appraisal Report also specifically states on its face that it was prepared for "Lorenzo Mortgage Company and it's [sic] successors and it's [sic] assigns." *See id.* ¶ 30; *see also* Appraisal Report at 1. The complaint's allegations are therefore sufficient to support a claim of negligent misrepresentation.

### III.    STATUTE OF LIMITATIONS

The plaintiff FDIC brought this suit in a timely manner.  Determining the timeliness of an action brought by the FDIC as receiver involves a two-part analysis.  *FDIC v. Abel*, No. 92-CV-9175, 1995 WL 716729, at *10 (S.D.N.Y. Dec. 6, 1995).  First, the Financial Institutions Reform Recovery and Enforcement Act of 1989 ("FIRREA"), provides the FDIC with a six-year statute of limitations for contract claims and a three-year limit for tort claims, starting from the date the FDIC assumed its receivership.  *See* 12 U.S.C.A. § 1821(d)(14); *see also F.D.I.C. v. Pelletreau & Pelletreau*, 965 F. Supp. 381, 385 (E.D.N.Y. 1997); *FDIC v. Abel*, 1995 WL 716729, at *10.  Second, the FIRREA limitations period only applies if the FDIC's claim was viable under state law on the date the FDIC assumed its receivership.  *FDIC v. Abel*, 1995 WL 716729, at *10 ("FIRREA does not revive stale claims." (citing *FDIC v. Henderson*, 61 F.3d 421, 423 (5th Cir. 1995))).  As to the first question of the timeliness of the FDIC's filing, here, the FDIC accepted its appointment as receiver of NetBank on September 28, 2007.  The FDIC filed its complaint with this court on September, 17, 2010, which was less than three years after its appointment.  Complaint ¶ 13.  The plaintiff's contract and tort claims are thus timely under FIRREA's limitations period.

The next question as to whether the plaintiff's claims were viable at the time of the FDIC's appointment requires the court to determine the relevant statute of limitations and date of accrual for each of the plaintiff's claims under state law.  Turning first to the statute of limitations, although the plaintiff's causes of action are titled as breach of contract, negligence, and negligent misrepresentation, its allegations of breach of professional standards of care evoke the New York claim for professional malpractice, which carries its own statute of limitations under N.Y. C.P.L.R. 214(6).  *See* Complaint ¶¶ 47, 64 ("Appraiser and Appraisal Company, in

their professional capacity, owed Lender a duty to conform to a certain standard of conduct . . . ."). N.Y. C.P.L.R. 214(6) provides for a three-year statute of limitations for "action[s] to recover damages for malpractice, other than medical, dental or podiatric malpractice." *See* N.Y. C.P.L.R. 214(6). New York state courts define malpractice as "negligence of a member of a profession in his relations with his client or patient." *Cubito v. Kreisberg*, 69 A.D.2d 738, 742, 419 N.Y.S.2d 578, 580 (2d Dep't 1979), *aff'd*, 51 N.Y.2d 900 (1980); *see also Chase Scientific Research, Inc. v. NIA Group, Inc.*, 96 N.Y.2d 20, 23 (2001) (defining malpractice as "professional misfeasance toward one's client"). The term "professionals," in the context of N.Y. C.P.L.R. 214(6), refers generally to those professions that require "extensive formal learning and training," "licensure and regulation," "a code of conduct," and "a system of discipline." *Chase Scientific Research, Inc.*, 96 N.Y.2d at 29 (citations omitted). [6] Real estate appraisers have been considered professionals by New York courts. *See Early v. Rossback*, 262 A.D.2d 601, 692 N.Y.S.2d 465 (2d Dep't 1999), *rev'd on other grounds sub nom. Brothers v. Florence*, 95 N.Y.2d 290, 739 N.E.2d 733 (2000).

N.Y. C.P.L.R. 214(6), furthermore, applies to all of the claims pursued by the plaintiff here, notwithstanding the fact that the plaintiff has brought one claim based in contract and two claims based in tort. Prior to the 1996 amendment to N.Y. C.P.L.R. 214(6), "case law provided that the applicable Statute of Limitations for an appraiser malpractice claim turned on the remedy sought. If a tort remedy was sought, the applicable Statute of Limitations was three years,

---

[6] Based on these criteria, New York courts have accepted and rejected the applicability of C.P.L.R. 214(6) to several professions. *See Chase Scientific Research, Inc.*, 96 N.Y.2d at 28 (affirming that architects, engineers, lawyers, and accountants are "professionals," but holding that insurance brokers are not); *In re R.M. Kliment & Frances Halsband, Architects*, 3 N.Y.3d 538, 543 (2004) (applying C.P.L.R. 214(6) to a professional negligence claim against an architect); *Castle Oil Corp. v. Thompson Pension Emp. Plans, Inc.*, 299 A.D.2d 513, 514, 750 N.Y.S.2d 629, 631 (2d Dep't 2002) (holding that actuaries are not "professionals" within the meaning of C.P.L.R. 214(6)).

whereas if a contract remedy was sought, the applicable Statute of Limitations was six years."
*Early*, 262 A.D.2d at 602, 692 N.Y.S.2d at 466 (internal citations omitted), *rev'd on other grounds sub nom. Brothers v. Florence*, 95 N.Y.2d 290, 739 N.E.2d 733 (2000).    The amendment effectively eliminated that distinction.    *See* N.Y. C.P.L.R. 214(6) ("an action to recover damages for malpractice . . . regardless of whether the underlying theory is based in contract or tort"); *see, e.g.*, *Morson v. Kreindler & Kreindler, LLP*, 814 F. Supp. 2d 220, 227 (E.D.N.Y. 2011) (holding that N.Y. C.P.L.R. 214(6) applied to breach of contract and breach of fiduciary duty claims against defendant attorneys because the claims were based on the same alleged conduct that formed plaintiff's legal malpractice claim).    All three of the plaintiff's claims here are brought on the basis of professional negligence, as evidenced by the complaint's allegations regarding a professional duty of care for appraisers and the defendants' failure to conform to that duty.    *See* Complaint ¶¶ 47-51, 64-68, 82-84.    Accordingly, the three-year statute of limitations under C.P.L.R. 214(6) applies to each of the plaintiff's claims.

For the date of accrual, the court also looks to the standard applicable to malpractice claims.    *See Morson*, 814 F. Supp. 2d at 227.    Under New York law, "[a]n action for malpractice accrues at the date of the malpractice complained of."    *Glamm v. Allen*, 57 N.Y.2d 87, 93 (1982) (citation omitted); *see also Williamson ex rel. Lipper Convertibles, L.P. v. PricewaterhouseCoopers LLP*, 9 N.Y.3d 1, 7-8 (2007) ("A claim accrues when the malpractice is committed, not when the client discovers it.") (citations omitted).    For appraiser malpractice actions, the date of malpractice is the date on which the appraisal was completed.    *See Early*, 262 A.D.2d at 601-02, 692 N.Y.S.2d at 466 (holding that appraiser malpractice claims were time-barred based on the date of the last appraisal performed by the defendants), *rev'd on other grounds sub nom. Bros. v. Florence*, 95 N.Y.2d 290, 739 N.E.2d 733 (2000); *cf. Ackerman v.*

*Price Waterhouse*, 84 N.Y.2d 535, 541 (1994) (holding that in the context of a malpractice action against an accountant, the plaintiff's claim accrued upon receipt of the accountant's work product because this is the point at which a client reasonably relies on the accountant's advice and can become liable for tax deficiencies). Thus, the earliest date of accrual here is December 7, 2005, the date on which the defendants completed and drafted their Appraisal Report. Complaint ¶ 29. Applying the three-year statute of limitations under N.Y. C.P.L.R. 214(6) to this date, the court finds that the plaintiff's claims were viable on September 28, 2007, the date on which the FDIC assumed its receivership position. As such, the plaintiff's claims are timely.

## IV. DAMAGES

The plaintiff has requested damages of $265,000 as its "principal loss," plus prejudgment interest of $90,365.22. Plaintiff's Mem. at 8-9, 11-12. The plaintiff derives this "principal loss" figure from the difference between the amount of the loan ($525,000) and the price at which Lender sold the subject property upon foreclosure ($260,000). The prejudgment interest represents the interest accrued from June 25, 2007, the date of the foreclosure sale, to April 8, 2011, at the New York statutory rate of 9%. In support, the plaintiff has included the affidavit of Karen Freeborn setting forth the foreclosure sale price of $260,000, which is corroborated by a Real Property Transfer Report. *See* Freeborn Aff. [DE 16-8]; New York Real Property Transfer Report [DE 16-7].[7] As discussed below, the court finds that the plaintiff is entitled to the compensatory damages amount requested, as well as the prejudgment interest accrued until the date of judgment.

---

[7] Ms. Freeborn was retained as "Investigations Lead Contractor" by the plaintiff to investigate matters pertaining to the mortgage loan in this litigation, including the amount of the loan and the amount for which the Subject Property sold upon foreclosure. *See* Freeborn Aff. ¶ 6-8.

## A. Standard

Federal Rule 55(b) requires the court to make an independent assessment of damages when deciding a motion for default judgment. *See SEC v. Mgmt. Dynamics, Inc.*, 515 F.2d 801, 814 (2d Cir. 1975). Damages are proven through an evidentiary hearing or through affidavits and other documentary submissions that provide a factual basis for determining the amount of damages to be awarded. *See Greyhound Exhibitgroup v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997). Having provided notice to the defaulting defendant, the court is able to receive documentary evidence in lieu of holding an evidentiary hearing on damages. *See, e.g.*, *Transatlantic Marine*, 109 F.3d at 111 ("We have held that, under Rule 55(b)(2), 'it [is] not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in the default judgment.'" (quoting *Fustok v. ContiCommodity Servs. Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)) (citation omitted)). Here, the court has not held a hearing but is in receipt of the affidavits and other documents provided by the plaintiff to support its damages claims.

## B. Analysis

"It is well settled that in breach of contract actions 'the nonbreaching party may recover general damages which are the natural and probable consequence of the breach.'" *Bi–Econ. Mkt., Inc. v. Harleysville Ins. Co. of N.Y.*, 10 N.Y.3d 187, 192 (2008) (quoting *Kenford Co. v. Cnty. of Erie,* 73 N.Y.2d 312, 319 (1989)). "[D]amages for breach of contract should put the plaintiff in the same economic position he would have been in had the defendant fulfilled the contract." *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 262 (2d Cir. 2002) (citing *Indu Craft, Inc. v. Bank of Baroda,* 47 F.3d 490, 495 (2d Cir. 1995)). Likewise for tort actions, "a

plaintiff must prove that a defendant's breach directly and proximately caused his or her damages." *Nat'l Mkt. Share, Inc. v. Sterling Nat. Bank*, 392 F.3d 520, 525 (2d Cir. 2004) (emphasis omitted) (citations omitted). Additionally, "'[t]he proper measure of damages for breach of contract is determined by the loss sustained or gain prevented at the time and place of breach.'" *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 197 (2d Cir. 2003) (quoting *Simon v. Electrospace Corp.,* 28 N.Y.2d 136, 145 (1971)); *Sharma v. Skaarup Ship Mgmt. Corp.*, 916 F.2d 820, 825 (2d Cir. 1990) ("It is a fundamental proposition of contract law, including that of New York, that the loss caused by a breach is determined as of the time of breach.") (citing *Simon*, 28 N.Y.2d at 145 (internal footnote omitted)).

Here, the plaintiff has proven that it suffered injury as a natural and probable consequence of the defendants' inflated appraisal. The complaint and supporting documents establish that Lender relied on the defendants' appraisal for the purpose of assessing the viability of Borrower's loan application. *See Sharma*, 916 F.2d at 826 ("The principal of the loan is determined by the market value of the collateral . . . ."). Indeed, the main purpose of the appraisal, of which the defendants were aware, was to aid the Lender in determining whether or not to make the loan. *See* Complaint ¶ 53; Appraisal Report at 6.

Thus, when Borrower defaulted and NetBank foreclosed upon the property, NetBank should have been left with property that was worth $550,000 at the time of appraisal. Instead, NetBank was left with property that was worth $372,500 at the time of the appraisal, and following the foreclosure sale, suffered a loss of $265,000 in principal. Had the value of the property been appraised for its true value, Lender "would not have approved or funded the [loan]" and in fact "would have required a viable secondary source of repayment to liquidate . . . ." Complaint ¶¶ 73, 74. Thus, if not for the negligent appraisal, Lender would not have suffered

a loss in principal because it would not have issued the loan at all. Placing the plaintiff in the position it would have been in had the defendants fulfilled the contract requires the court to award the plaintiff damages in the amount of its loss of principal, $265,000.[8]

The court notes that even though it was the Borrower's default, and not the defendants' conduct alone, that led to the plaintiff's loss of $265,000, that does not change the court's analysis because the prospect of the Borrower's default was in the reasonable contemplation of the parties. In New York, "[s]pecial, or consequential damages, which 'do not so directly flow from the breach,' are recoverable in limited circumstances." *Bi-Econ. Mkt., Inc.*, 10 N.Y.3d at 192 (quoting *American List Corp. v. U.S. News & World Report*, 75 N.Y.2d 38, 43 (1989)). Consequential damages are awarded only when the loss from such a breach was "reasonably contemplated" by the parties. *See id.* at 193. "It is not necessary for the breaching party to have foreseen the breach itself or the particular way the loss occurred, rather, 'it is only necessary that loss from a breach is foreseeable and probable.'" *Id.* (quoting *Ashland Mgt. v. Janien*, 82 N.Y.2d 395, 403 (1993)) (citations omitted). Thus, although the Borrower's default on the loan and the foreclosure sale of the property at issue were not directly caused by the inflated appraisal, they are the types of events that can be reasonably contemplated in any real estate transaction. Professional appraisers like the defendants, who are aware that the property is being appraised for the purpose of a mortgage loan for real property, would reasonably foresee that the borrower could default on that loan and the bank would be forced to sell the property to mitigate its loss. For these reasons, the plaintiff is entitled to a damages award of $265,000.

---

[8]   The plaintiff would also likely be entitled to return of the fee it paid the appraiser as direct damages, *see Vitol Trading S.A., Inc.*, 874 F.2d at 79-80, but since the plaintiff has neither alleged the amount of the fee nor sought its recovery, the court has no basis for awarding it as damages.

## C. Prejudgment Interest

The plaintiff FDIC is also entitled to prejudgment interest on its damages award. The FDIC requests $90,365.22 in prejudgment interest, based on the state statutory rate of 9% and calculated from June 25, 2007, the date on which NetBank sold the foreclosed property, to April 8, 2011.[9] Under New York law, prejudgment interest is calculated at a rate of 9% per annum. N.Y. C.P.L.R. § 5004. Furthermore, "New York law requires a district court to grant prejudgment interest when a party is entitled to such interest as a matter of right." *Matsumura v. Benihana Nat'l Corp.*, 465 F. App'x 23, 30 (2d Cir. 2012) (citing *New England Ins. Co. v. Healthcare Underwriters Mut. Ins. Co.*, 352 F.3d 599, 602-03 (2d Cir. 2003)). "A prevailing party is entitled to prejudgment interest as a matter of right 'upon a sum awarded because of a breach of performance of a contract, or because of an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property.'" *Id.* (quoting N.Y. C.P.L.R. § 5001(a)); *see also Graham v. James,* 144 F.3d 229, 239 (2d Cir. 1998) ("Under New York law, 'prejudgment interest is normally recoverable as a matter of right in an action at law for breach of contract.'" (quoting *Adams v. Lindblad Travel, Inc.*, 730 F.2d 89, 93 (2d Cir. 1984))). As discussed above, the plaintiff is entitled to damages based on the defendants' breach of contract. Thus, the plaintiff is also entitled to prejudgment interest on that amount.

---

[9] The awarding of prejudgment interest is a question of substantive law. *Schwimmer v. Allstate Ins. Co.*, 176 F.3d 648, 650 (2d Cir. 1999) (citing *Marfia v. T.C. Ziraat Bankasi*, 147 F.3d 83, 90 (2d Cir. 1998)). Thus, "where prejudgment interest can only be awarded on the basis of what is solely a state claim, it is appropriate to use the state interest rate." *Thomas v. iStar Fin., Inc.*, 652 F.3d 141, 150 n.7 (2d Cir. 2011); *see also Marfia*, 147 F.3d at 90.

Calculated at the statutory rate of 9%, interest on the plaintiff's damages of $265,000 from June 25, 2007, the date of the foreclosure sale, to August 1, 2012 amounts to $121,733.02.[10] Following August 1, 2012, interest will continue to accrue at the rate of $65.34 per day until the date that judgment is entered.[11]

## CONCLUSION

In accordance with the above considerations, the undersigned hereby recommends that the motion for default judgment be granted, and that the plaintiff be awarded damages in the amount of $265,000, and prejudgment interest in the amount of $121,733.02 plus $65.34 per day from August 1, 2012 to the date of judgment.

\*        \*        \*        \*        \*

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see, e.g.,* *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 299 (2d Cir. 1992); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

---

[10] According to N.Y. C.P.L.R. 5001(b), prejudgment interest is to be "computed from the earliest ascertainable date the cause of action existed . . . ." While an argument can be made that the plaintiffs are entitled to prejudgment interest from the date of the appraisal, the plaintiff offers the later date of the foreclosure sale as the date on which the court should begin to calculate prejudgment interest without explanation or citation to authority. Since the plaintiff's choice of accrual date results in a smaller prejudgment interest award, the court declines to reassess whether the plaintiff is entitled to a longer prejudgment interest period.

[11] The *per diem* interest is calculated by multiplying the principal amount owed ($265,000) by the yearly statutory rate (.09) and dividing this amount by 365 (the number of days in a year) to arrive at $65.34.

Counsel for the plaintiff shall serve a copy of this Report and Recommendation on the defendants by regular mail and file proof of such service in the record.

Respectfully Recommended,

*Viktor V. Pohorelsky*

VIKTOR V. POHORELSKY
United States Magistrate Judge

Dated:    Brooklyn, New York
         August 2, 2012